```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

                              - - -

UNITED STATES OF AMERICA      :  CRIMINAL NOS. 16-130-1, 2
                              :
                              :
            v.                :  Philadelphia, Pennsylvania
                              :  November 27, 2017
                              :  11:50 o'clock a.m.
CHARLES M. HALLINAN (1)       :
WHEELER K. NEFF (2)           :
. . . . . . . . . . . . . . . .

                    EXCERPT OF JURY TRIAL
           BEFORE THE HONORABLE EDUARDO C. ROBRENO
                 UNITED STATES DISTRICT JUDGE

                              - - -

APPEARANCES:

For the Government:     MARK B. DUBNOFF, ESQUIRE
                        JAMES A. PETKUN, ESQUIRE
                        U.S. Attorney's Office
                        615 Chestnut Street
                        Suite 1250
                        Philadelphia, PA  19106

For the Defendant       EDWIN J. JACOBS, JR., ESQUIRE
Charles M. Hallinan:    Jacobs and Barbone
                        1125 Pacific Avenue
                        Atlantic City, NJ  08401

For the Defendant       CHRISTOPHER D. WARREN, ESQUIRE
Wheeler K. Neff:        1730 North Fifth Street
                        Suite 604
                        Philadelphia, PA  19122

                        DENNIS J. COGAN, ESQUIRE
                        Dennis J. Cogan & Associates
                        2000 Market Street
                        Suite 2925
                        Philadelphia, PA  19103

                   Laws Transcription Service
                    48 W. LaCrosse Avenue
                     Lansdowne, PA 19050
                        (610)623-4178
```

ESR Operator:          Nelson Malave

Transcribed by:        Geraldine C. Laws, CET


(Proceedings recorded by For the Record Gold digital sound recording; transcript provided by AAERT-certified transcriber.)

1  (The following excerpt occurred at 11:50 o'clock
2  a.m.)
3  THE COURT: Okay, please be seated. So, Mr. Jacobs,
4  two issues. Let's deal with the forfeiture first. What's
5  your thinking as to how you would like to proceed in terms of
6  timing?
7  MR. JACOBS: Judge, I think the forfeiture issues
8  are fairly complex and I think the forfeiture list is over 20
9  assets. So, I would ask the Court to set aside a couple of
10  days for hearings on forfeiture. I don't know the Court's
11  calendar, but I do know that I'll be back in trial in Federal
12  Court in New York in early January.
13  THE COURT: Well, I don't know what the Government's
14  is, but I think that we would want to address these issues
15  more promptly than that. We don't have to do it today, but
16  can we do them later this week?
17  MR. JACOBS: Later this week would be difficult to
18  muster our proofs in that short a period of time, Judge.
19  THE COURT: Okay.
20  MR. JACOBS: I would suggest perhaps the following
21  week.
22  THE COURT: Okay.
23  MR. WARREN: That's fine, Judge.
24  THE COURT: Okay, let me ask the Government.
25  MR. DUBNOFF: Yes, your Honor. We'd be fine to

1  proceed next week.
2       THE COURT: Okay and you said you would need a
3  couple of days?
4       MR. JACOBS: I think so, your Honor.
5       THE COURT: Now, one of the possibilities may be
6  that that also would afford the parties an opportunity to
7  discuss these assets. There may be some agreement on some
8  and not on others.
9       MR. JACOBS: Yes.
10      THE COURT: And refine what the issues are and
11 submit papers to you. I think that if we go forward, it's
12 probably more likely that it will be not next week, but the
13 week after. That would be the week of December 12th.
14      MR. DUBNOFF: That's fine with us, your Honor.
15      THE COURT: Okay, Mr. Vance will check with you
16 more specifically. Because I would like to have then some
17 papers submitted to me and you would do that.
18      Now, it would seem to me that while we wait for
19 that, is the Government requesting any interim orders on
20 these assets?
21      MR. DUBNOFF: If I may consult with --
22      THE COURT: Yes.
23      MR. DUBNOFF: -- USA Carillo.
24      THE COURT: Yes, let's have her join you here.
25      MR. DUBNOFF: All right, I'm going to relinquish my

5

1  seat.
2              THE COURT:  Yes, fine.  So, Ms. Carillo, what's your
3  thinking here?
4              MS. CARILLO:  Good morning, your Honor.  The
5  Government will be prepared to proceed on forfeiture.
6              THE COURT:  Now, are you requesting any interim
7  orders concerning any of these assets?
8              MS. CARILLO:  Presently, your Honor, all but one
9  asset is restrained and we would ask that that restraining
10 order continue in place until --
11             THE COURT:  Do I have to enter an order or does that
12 order carry forward?
13             MS. CARILLO:  That order carries forward.
14             THE COURT:  Okay, so I don't need to do anything.
15 All we have to do is then schedule a date and how long will
16 your case take, assuming that all the assets are in play?
17             MS. CARILLO:  Your Honor, I believe I can present
18 the Government's case in approximately three hours.
19             THE COURT:  Okay and what would that consist of?
20             MS. CARILLO:  It would consist of testimony by
21 Special Agent Susan Rohrer (ph) and the submission of some
22 additional exhibits, mostly summary exhibits.
23             THE COURT:  Okay, fine.  And we'll need findings of
24 facts and conclusions of law or it this a general -- general
25 verdict?

1        MS. CARILLO: Your Honor, it is.  Your Honor will
2   want to support your position with findings of fact, yes.
3        THE COURT: Okay, so you will submit some findings
4   of fact?  I don't think you have.
5        MS. CARILLO:  I have not and I can certainly do
6   that.
7        THE COURT: Okay, good.  Mr. Jacobs, what's your
8   thinking here?
9        MR. JACOBS:  Well, as to the timing, that's
10  agreeable.
11       THE COURT:  Okay.
12       MR. JACOBS:  And if the Government intends to submit
13  proposed findings of fact, that might expedite the process
14  you've described of discussing forfeiture agreements.
15       THE COURT: Okay, fine.  So, I'll enter a scheduling
16  order.  Maybe you can submit proposed findings of fact by the
17  end of the week and that will give you an opportunity next
18  week to discuss these matters as to what the issues are and
19  then  by the end of the week, the defendants can submit their
20  proposed finding of facts and conclusions of law, so that
21  we'll be prepared to go the following week.
22       MS. CARILLO:  Very well, your Honor.
23       THE COURT:  So, if that's all right with everybody
24  we'll enter an order to that extent.  Now, finally, it's
25  bail.  What is the Government's position on bail?

1    MR. DUBNOFF: Your Honor, the Government moves to
2    revoke bail and remand both defendants into custody.
3    THE COURT: Okay and what is the basis for that?
4    MR. DUBNOFF: A number of things, your Honor. Both
5    defendants are facing jail sentences under the United States
6    Sentencing Guidelines that have ranges of upwards of ten
7    years as floors. My preliminary calculation of Mr. Neff's
8    sentence, in particular, was a floor of 14 years. I cannot
9    recall what Mr. Hallinan's floor was under the guidelines,
10   but I remember it being more than a decade, as well. We
11   have, with Mr. Hallinan, a defendant who did not comply with
12   your Honor's previous bail order. Not just by communicating
13   with Mr. Gray and Mr. Klein by e-mail, there was a telephone
14   conversation between Mr. Hallinan and Mr. Klein, as well.
15   Both individuals were identified as potential witnesses.
16   You have in Mr. Hallinan's case, as well, an
17   individual who, knowing that the Government was trying to
18   contact Mark Kabash (ph) for potential testimony before the
19   Grand Jury, he reached out to Mr. Kabash on the day of his
20   Grand Jury testimony. And we've also seen the entire Lisa
21   Mathewson episode where he was essentially paying Randall
22   Ginger or paying the legal fees for Randall Ginger to try to
23   block the Grand Jury's investigation and prosecution of this
24   case. So, you have in Mr. Hallinan an individual who has
25   taken a fair number of steps to try to impede justice and to

1  violate your Honor's order.

2  With regard to Mr. Neff, there are a couple of
3  things. First of all, Mr. Neff testified on the stand for
4  four days. Clearly, the jury did not credit his testimony.
5  In light of the verdict, they must have found him to be not
6  credible with many aspects of his testimony. In short, he
7  lied on the witness stand, your Honor. There is no
8  representation that he could make that would support him
9  staying out on bail. We do not believe any representation he
10 would make to the effect that he would comply with your
11 Honor's orders would be credible. So, for those reasons --

12 THE COURT: Now, what is the evidence that there
13 would be a risk of flight or that there would be a danger to
14 others or to themselves?

15 MR. DUBNOFF: Well, we don't have any evidence to
16 suggest that there is a danger to themselves. I have no
17 information regarding that. The risk of flight analysis
18 changes dramatically. Right now, they have substantial
19 incentive to flee. Both men are now aware that they are
20 likely looking at a very lengthy jail term if they stay
21 within the district. I would note, your Honor, that in the
22 Tucker case, both Mr. Tucker and Mr. Muir had their
23 conditions change. I believe they are both on home
24 confinement with electronic monitor and we would be
25 recommending that, but for Mr. Hallinan's efforts to obstruct

1  justice and his defiance of your Honor's previous orders and
2  Mr. Neff's perjury on the witness stand.
3              So, there is a different situation here, your Honor.
4  At the very least, their movements should be restricted given
5  the sentences that they are facing, the likelihood of flight.
6  And frankly, your Honor, they have been fleeing justice,
7  especially Mr. Hallinan's case, in some regard or another for
8  more than a decade and it is time for them to start.
9              THE COURT:  What do you mean by that?
10             MR. DUBNOFF:  Well, what I mean is that for a while
11 there were efforts to hold them accountable civilly.  There
12 is still a lawsuit pending in Florida, which is from 1999,
13 that's the Betz lawsuit for which we just introduced the
14 docket sheet.  There are -- there have been efforts to hold
15 them accountable civilly by plaintiffs in California, by
16 plaintiffs in New Mexico, by the New York Attorney General's
17 Office, by plaintiffs in Indiana.  And he has managed to
18 evade justice for more than a decade, your Honor and he has,
19 just by count of the Indiana fraud alone, 1,393 victims.  By
20 the calculations of Mr. Smith of Intercept, which you know
21 he went over with Mr. Jacobs as to what the math was.  You
22 have $1.4 million people or $1.4 loans that were processed.
23 We don't know the precise numbers of the people who were in
24 the states where the loans were illegal.  But the law of
25 averages says it has to be hundreds of thousands and those

1   are additional victims for Mr. Hallinan. And it's time for
2   Mr. Hallinan to start paying --
3           THE COURT: How about Mr. Neff? You put him in a
4   separate category?
5           MR. DUBNOFF: He is in a separate category and we
6   would be recommending the same condition for Mr. Neff as had
7   applied for Mr. Muir, which my understanding is home
8   confinement with electronic monitoring, but for the absurdity
9   of his testimony over the four days. And the concern is that
10  whatever representation that he would make to your Honor,
11  that he would be able to comply with the bail terms, we would
12  simply submit that it just wouldn't be credible in light of
13  the testimony that he gave on the witness stand during this
14  trial.
15          THE COURT: How about, okay, that would go to risk
16  of flight?
17          MR. DUBNOFF: It would, your Honor. There is no
18  assurance that they would comply with the terms.
19          THE COURT: Mm-hmm.
20          MR. DUBNOFF: Oh, the other thing with regard to Mr.
21  Neff, is that if he is on home confinement, I believe his
22  home is one of the properties that is subject to forfeiture.
23          THE COURT: I guess his office as well, right?
24          MR. DUBNOFF: I believe so, your Honor. And we have
25  admissions from Mr. Neff, at the trial, that he used that

1   particular piece of property to found 5th Avenue, Palmetto,
2   Sable and I believe some other companies that are part of the
3   RICO enterprise.  So, that particular piece of property may
4   be subject to forfeiture.  We're certainly going to seeking
5   forfeiture and be relying, at least in part, on Mr. Neff's
6   own admissions on the witness stand.  So, I don't believe
7   that particular property is going to be available for Mr.
8   Neff for much longer.
9           THE COURT:  Mr. Jacobs, please?
10          MR. JACOBS:  Thank you, Judge.  Firstly, Judge,
11  sentencing guideline calculations are what they are there,
12  all advisory now and the ultimate position in this case is up
13  to you.  And you will be passing --
14          THE COURT:  There's no mandatories here?
15          MR. JACOBS:  That's correct.
16          THE COURT:  Okay.
17          MR. JACOBS:  And you'll be passing sentencing on a
18  69 and a 70 year old -- 76 year old person with no prior
19  records, criminal history one, and so on.  The New York case
20  is a parallel, it is not precedent, it's not binding.  Mr.
21  Muir, the lawyer, did testify in that case, was disbelieved
22  by the jury.  That judge -- that Federal Judge in New York
23  did change the bail, but the extent of it was electronic
24  monitoring in their homes.
25          Mr. Hallinan has been under indictment for 18

```
 1  months, under supervision of pre-trial services.  They made
 2  no negative report to you about any of the things, I've
 3  understood, that Mark is now arguing.  There is no evidence
 4  of a flight or a danger risk.  None at all.  There's
 5  speculation, but with passport surrenders and home
 6  confinement, electronic monitoring, there really is no risk
 7  at all.  Counsel may --
 8           THE COURT: What's the amount of the bail in this
 9  case?
10           MR. JACOBS: It is a property bail.  I don't have it
11  here in court with me.  It's – we posted property with values
12  in the millions of dollars.
13           THE COURT: Do you have any idea what it is?
14           MR. DUBNOFF: I don't recall.  Oh, it looks like –
15           JUANITA GOMEZ: Your Honor, two days ago in this –
16           THE COURT: Why don't you come here, Ms. Gomez?
17           All right.
18           JUANITA GOMEZ: Your Honor, Charles Hallinan's bail
19  which was set April 7th, 2016 was $500,000 secured by
20  property located at 641 Springdale Road, Villanova, PA.  And
21  Mr. Wheeler Neff, his bail amount was $250,000 secured by
22  property.  Also posted – I'm sorry, that one was posted April
23  7th, 2016.
24           THE COURT: So 500,000 and 250,000, right?
25           JUANITA GOMEZ: Yes, sir.
```

1          THE COURT: And what has been their conduct during
2   the pretrial portion of this case?
3          JUANITA GOMEZ: Your Honor, Charles Hallinan is being
4   supervised in the Southern District of Florida.  His
5   compliance there has, according to the officer there, Mr.
6   Goldberg, no issues at all.  And the same with Wheeler Neff
7   who's been supervised in the District of Delaware by Officer
8   Carmichael, and he too says there are no issues with
9   complying with bail conditions.
10         THE COURT: Okay, very good.  Thank you, Ms. Gomez.
11         Now, are there any additional properties that are
12  not the subject to the forfeiture requests?
13         MR. JACOBS: Any additional properties which might be
14  available for collateral?
15         THE COURT: Exactly.
16         MR. JACOBS: I'd have to confer with my client,
17  Judge.
18         THE COURT: Okay.
19         MR. JACOBS: I do not know.
20         THE COURT: Very good.  So I get your point.
21         MR. WARREN: Judge, obviously I'll be joining Mr.
22  Jacobs in March.  My client has complied with all conditions
23  of bail.  I would also note that as Mr. Jacobs pointed out,
24  Mr. Muir who was convicted up in New York was also granted
25  bail despite the fact that he testified and the jury's

1  verdict indicated that they rejected –

2          THE COURT: Well, we have to look at the
3  circumstances of this particular case.

4          MR. WARREN: Correct

5          THE COURT: I don't know to what extent that their
6  risk of flight or danger to others bears upon this case.
7  What about the Government's argument that perjury was
8  committed, that obviously the jury did not believe Mr. Neff's
9  testimony, so any representation that he makes now should not
10 be believed by the Court.

11         MR. WARREN: Well, Judge, again there's no indication
12 that he's a risk of flight, okay?  He certainly -- I don't
13 think the Government is contending that perjury somehow makes
14 you a danger to the community.  So the question would be
15 whether or not the jury's rejection of his testimony
16 indicates that he's a risk of flight.

17         And the only argument on that score that they've
18 come up with is the one that Mr. Jacobs just addressed, the
19 fact that he's looking at a hefty sentence under the
20 guidelines.  But as Mr. Jacobs pointed out, that is a
21 recommendation.  There are no mandatory minimums.  House
22 arrest with electronic monitoring would certainly address --
23 I don't believe that's even necessary, Judge.  He showed up
24 every -- where's he going to go?  He doesn't have a passport.
25 His entire life is in Delaware.  There is nowhere for him to

15

1  go, so there is no place for him to flee to.
2       THE COURT: Okay.
3       MR. WARREN: With respect to the house, it's owned as
4  tenancy by the entireties. And I haven't looked at the
5  forfeiture issues yet, but I will. But it's my understanding
6  of the law that what could be forfeited would be his interest
7  in whatever the face is. But that we'll address at the
8  forfeiture hearing.
9       But again, to the extent the Court has any
10 questions, you don't need his word to put him on house arrest
11 with electronic monitoring. That requires no assurance from
12 Mr. Neff whatsoever.
13      THE COURT: And that would be in Delaware, right?
14      MR. WARREN: Yes, sir.
15      THE COURT: Is he supervised in Delaware or in
16 Pennsylvania?
17      MR. WARREN: In Delaware, your Honor.
18      I'm sorry, yes?
19      He's being supervised in Delaware. It's my
20 understanding he's complied with every provision of bail and
21 supervision that has been imposed upon him. And if you're
22 worried about him running away, I suggest it's not something
23 you need to be concerned about. But to the extent it is, you
24 don't have to take his word. Make him stay at his house and
25 keep an ankle bracelet on.

Case 2:16-cr-00130-ER  Document 417  Filed 04/20/18  Page 16 of 20

16

| | |
|---|---|
| 1 | THE COURT: Okay, very well. |
| 2 | Well, it seems to me that the Government has not |
| 3 | carried its burden in this particular case that either one of |
| 4 | either one of the defendants would be a risk of flight or a |
| 5 | danger to others.  However, I do recognize that the |
| 6 | circumstances have changed.  There has been a jury verdict. |
| 7 | The evidence in the case was considerable, if not |
| 8 | overwhelming.  And therefore that should also enter into the |
| 9 | Court's calculus. |
| 10 | I think that the appropriate conditions will be as |
| 11 | follows: We will double the amount of bail and release the |
| 12 | defendant, Hallinan, in $1,000,000 bail, and we will give him |
| 13 | 14 days to provide collateral on that amount of bail.  That |
| 14 | will coincide with the discussion on the forfeited |
| 15 | properties, so we'll be able to see which ones are subject to |
| 16 | forfeiture and which ones may be available for collateral. |
| 17 | Mr. Neff likewise will be released in home |
| 18 | confinement subject to electronic monitoring.  But the amount |
| 19 | of bail will be increased from 250,000 to 500,000.  All other |
| 20 | conditions will remain the same. |
| 21 | Now, Mr. Hallinan is being supervised in the |
| 22 | Southern District of Florida.  Mr. Neff is being supervised |
| 23 | in he District of Delaware.  What's your view of whether or |
| 24 | not that should continue to be the case?  I understand Mr. |
| 25 | Hallinan has a residence here in Pennsylvania? |

| | |
|---|---|
| 1 | MR. JACOBS: Yes. |
| 2 | MR. DUBNOFF: Either one is fine, whether it's the |
| 3 | Villanova residence or the Boca Raton residence. |
| 4 | THE COURT: Yes. |
| 5 | MR. DUBNOFF: Let me just check with Maria for one |
| 6 | second. |
| 7 | (Discussion off the record.) |
| 8 | MR. DUBNOFF: Your Honor, in light of the fact that |
| 9 | the Florida place is actually subject to the notice of |
| 10 | forfeiture, our position is that if there's going to be home |
| 11 | confinement of Mr. Hallinan, it should be to the Villanova |
| 12 | property. |
| 13 | THE COURT: That's not subject to – |
| 14 | MR. DUBNOFF: It is not.  It may be sought as a |
| 15 | substitute asset down the road, but for right now it is not |
| 16 | subject to any of the notices of forfeiture. |
| 17 | THE COURT: Okay.  Well, we will then confine him to |
| 18 | the Villanova residence.  I think that could evolve as your |
| 19 | discussions move forward as to whether or not that would be |
| 20 | the permanent place.  But it should then be the place where |
| 21 | he will be confined at least for the next 14 days. |
| 22 | Now, pretrial, when can we make arrangements for |
| 23 | this matter, landline, et cetera. |
| 24 | JUANITA GOMEZ: Your Honor, we don't need a landline. |
| 25 | THE COURT: Okay.  I'm old fashioned, I guess, huh? |

18

1    JUANITA GOMEZ: We used to.
2    THE COURT: Yeah.
3    JUANITA GOMEZ: We no longer need a landline for the
4 installation –
5    THE COURT: So you can do this this afternoon?
6    JUANITA GOMEZ: We can do this today, yes.
7    THE COURT: Okay, very well.
8    JUANITA GOMEZ: With respect to the home confinement
9 are we putting him on detention, home detention?
10   THE COURT: Yes.
11   JUANITA GOMEZ: Okay.
12   THE COURT: He would only be permitted to leave his
13 residence for purposes of conferring with counsel, medical
14 reasons or religious obligations upon prior approval of
15 pretrial services, right?
16   JUANITA GOMEZ: Yes.
17   THE COURT: And we'll enter an order to that effect
18 today.
19       Anything else today?
20   MR. DUBNOFF: Not from the Government, your Honor.
21   MR. JACOBS: Nothing, Judge.
22   MR. WARREN: Nothing from me, Judge.
23   THE COURT: Now, one final point. The exhibits that
24 were introduced as evidence in trial, each party shall take
25 custody of those exhibits as officers of the Court and

19

1  preserve their integrity in the event that they're needed for
2  post-trial proceeding or appeals.
3            MR. DUBNOFF: Yes, sir.
4            THE COURT: Okay.  Thank you.
5            MR. DUBNOFF: Thank you, your Honor.
6            COURT CLERK: All rise.
7            (Here ends the requested excerpt of jury trial at
8  12:14 o'clock p.m.)

CERTIFICATION

I hereby certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

s:/Geraldine C. Laws, CET             Date 12/12/17
Laws Transcription Service