```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    :   CRIMINAL ACTION
                             :   NO. 16-cr-130-2
     v.                      :
                             :
WHEELER NEFF                 :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              March 3, 2021

## I.   Introduction

Wheeler Neff ("Defendant") moves for compassionate release in light of the COVID-19 pandemic. For the reasons that follow, the motion will be denied.

On November 27, 2017, after a ten-week trial, Defendant was convicted of violating RICO, conspiracy to commit wire fraud, and wire fraud in connection with fraudulent payday lending schemes. On May 25, 2018, Defendant was sentenced to eight years in prison (with a projected release date of May 1, 2025). Defendant has served nearly three years of his eight-year sentence.

Defendant is a 72-year-old male who suffers from atrial fibrillation, hypertension, atherosclerosis, cardiomyopathy, and being overweight.[1] Based on the alleged extraordinary and

---

[1]  In his reply brief, Defendant also notes that he was diagnosed with basal cell skin cancer in January 2020.

compelling reasons including these disorders and his age, and in light of the COVID-19 pandemic, Defendant seeks immediate release from incarceration.

**II. Legal Authority**

Defendant seeks a reduction in his sentence to time served with home confinement during supervised release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by Section 603 of the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (2018). The Court cannot grant Defendant home confinement under 18 U.S.C. § 3582(c)(1)(A). As the Government notes, and as this Court has ruled before, the Court has no authority to designate Defendant to home confinement or review the BOP's designation decision. See 18 U.S.C. § 3621(b) (2018) (BOP's designation decision is not subject to judicial review); United States v. Torres, No. 18-cr-414, 2020 WL 3498156, at *5-6 (E.D. Pa. June 29, 2020). However, the Government does not contest the Court's authority to review the instant motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, thus the Court will rule on Defendant's motion for a reduction in sentence without considering home confinement as suggested relief.

**III. Discussion**

Following an inmate's exhaustion of administrative remedies within the Bureau of Prisons, a Court may "reduce [an inmate's]

2

term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A); see United States v. Rodriguez, 451 F. Supp. 3d 392, 394-95 (E.D. Pa. 2020). Defendant has satisfied the statute's exhaustion requirements. See United States v. Harris, 812 F. App'x 106, 107 (3d Cir. 2020).[2] Thus, to prevail on his motion, the Court must: (1) find both extraordinary and compelling reasons to warrant a reduction and (2) consider the applicable 3553(a) sentencing factors. See United States v. Andrews, 480 F. Supp.3d 669, 675 (2020).

The statute does not define the terms "extraordinary and compelling." Although technically not applicable to this case,[3] prior to the enactment of the First Step Act, the Sentencing Commission had issued a policy statement identifying circumstances that constitute "extraordinary and compelling"

---

[2] The Third Circuit noted that an inmate can file a motion for compassionate release only after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf **or** the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, **whichever is earlier**." Harris, 812 F. App'x at 107 (quoting 18 U.S.C. § 3582(c)(1)(A)). In this case, Defendant submitted a request for compassionate release to the Warden of FCI Fort Dix on November 5, 2020. Since that time, the Warden has declined to act on his application.

[3] The policy statement preceded the enactment of the First Step Act and applies only to motions for compassionate release brought by the BOP. However, although not binding, the policy statement can inform the judgment of courts in determining whether compassionate release should be granted. See Andrews, 480 F. Supp.3d at 683-84.

reasons justifying compassionate release. See U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). As many courts have noted, the Sentencing Commission's policy statements "provide[] helpful guidance" when considering a motion for compassionate release. Rodriguez, 451 F. Supp.3d at 400, 406; see also Andrews, 480 F. Supp.3d at 677.

The policy statement lists "three specific examples" and also "provides a fourth 'catchall' provision." Rodriguez, 451 F. Supp.3d at 395. Relevant to this case is the specific example listed in Note 1(A), which provides that extraordinary and compelling reasons exist where a "defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility [extraordinary] and from which he or she is not expected to recover [compelling]." U.S.S.G. § 1B1.13 cmt. n.1(A). The Government concedes that Defendant is potentially at risk of an adverse outcome from COVID-19 due to his age and "a variety of heart ailments" and that he falls within the scope of Note 1(A) of the policy statement.

The Court will assume, for purposes of this motion and without deciding, see United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020), that Defendant's underlying health conditions, including heart and arterial disease, and age [extraordinary], from which he is not expected to recover

4

[compelling], present sufficient reasons for compassionate release in light of the COVID-19 pandemic. Although this is a necessary part of the analysis, it is not sufficient.

Once the Court determines that there are extraordinary and compelling reasons for compassionate release, the Court must consider the relevant section 3553(a) sentencing factors. Although section 3553(a) "establishes factors to consider in initially imposing a sentence, not every factor applies [in every case]." Rodriguez, 451 F. Supp.3d at 406. The relevant factors in this case are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct; [and]
>     (C) to protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a) (2018).

The first relevant factor is "the nature and circumstances of the offense and the history and characteristics of the defendant." Id. § 3553(a)(1). For nearly a decade, Defendant, who at the time of the offense was a practicing lawyer, helped his payday lending[4] clients/co-conspirators profit from the

---

[4] Payday loans are "short-term, high interest loans that are generally due on the consumer's next payday after the loan is taken out. The annual percentage rate of these loans is usually very high – i.e., 390% or more."

5

financial distress of hundreds of people, many of whom are among our most economically vulnerable citizens. Defendant helped garner millions of dollars from victims through illegal usurious interest rates on payday loans.

The second applicable factor is the need for the imposed sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." See 18 U.S.C. § 3553(a)(2)(A). Defendant has served only three years, which is less than half of the original sentence imposed.[5] Given the seriousness of the offenses of conviction, Defendant's release, with less than fifty percent of his sentence served, would not reflect the seriousness of the offenses, promote respect for the law, or provide just punishment for the offenses.

The third relevant factor is the need for the imposed sentence to "afford adequate deterrence to criminal conduct." Id. § 3553(a)(2)(B). A lengthy sentence is necessary here. This is because in cases involving white collar crimes, such as this one, a sophisticated individual's understanding of the likelihood of apprehension and length of punishment is an

---

https://www.ftc.gov/news-events/media-resources/consumer-finance/payday-lending (last visited March 3, 2021).

[5]   The Court notes that it previously showed leniency at sentencing. Defendant's guideline range was 121 to 151 months. The Court granted Defendant a downward variance resulting in a sentence of 96 months.

important component of a putative offender's calculus on whether to commit the crimes. See United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment."); see also United States v. Edwards, 595 F.3d 1004, 1021 (9th Cir. 2010) (Bea, J., concurring in part and dissenting in part) (noting that the ability of a white-collar criminal to foresee the upside of his crime "extends also to the possible downside of his fraud: apprehension, conviction, and punishment. . . . It is precisely at this point-when the thief of above-average education and wit is deciding whether to do the deed-that reflection on probable prison time-general deterrence-can have an effect").

The final applicable factor is the need for the imposed sentence to "protect the public from further crimes of the defendant." Id. § 3553(a)(2)(C). It is true that Defendant's conduct at FCI Fort Dix, including having no disciplinary infractions and serving as the senior GED tutor in the English-speaking GED program, tends to show rehabilitation. However, while Defendant now claims remorse for his crimes, he repeatedly perjured himself during trial and has not officially accepted any responsibility for his crimes. Given these factors along with the sophistication of the crimes, the Court concludes that

Defendant poses some risk to the public (particularly the financially vulnerable) by virtue of his potential to aid in new fraudulent schemes upon release.

Prior similar decisions of this Court and the Third Circuit are consistent with this Court's analysis. See, e.g., United States v. Pawlowski, 967 F.3d 327 (3d Cir. 2020) (finding that defendant had extraordinary and compelling reasons for a reduction, but the district court did not abuse its discretion in concluding that release after serving 19 out of a 180-month sentence for public corruption is not warranted under the 3553(a) factors, and the district court properly relied on factors such as the limited time served and the seriousness of the crime); United States v. Shulick, No. 16-cr-428, 2020 WL 3250584 (E.D. Pa. June 16, 2020) (finding that regardless of the defendant's asthma, release was not warranted after only serving 19 out of a 60-month sentence for significant fraud); United States v. Tartaglione, No. 15-cr-491 2020 WL 3969778 (E.D. Pa. July 14, 2020) (finding that release was not warranted after only serving two years of an 82-month sentence for committing a $2 million fraud against a public health clinic).

Thus, even considering evidence of Defendant's rehabilitation, his lack of criminal history, the absence of violence in connection with the crimes of conviction, and the

risk that he could contract Covid-19,[6] the Court finds that the section 3553(a) factors do not warrant compassionate release.

### IV. Conclusion

For the reasons set forth above, the Court will exercise its discretion and deny Defendant's motion. An appropriate order follows.

---

[6]  Defendant is currently housed at FCI Fort Dix where nearly 1,100 inmates, about half of the inmate population, have been infected with COVID-19, one of which has died. See ECF No. 807-1 (letter from the congressional delegation of New Jersey to the Inspector General); ECF No. 819-1 (inmate death release from the BOP).

9